# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:18-cv-10675-RGK | Date | August 02, 2019 |
|---|---|---|---|
| Title | *In re Verity Health System of California, Inc., et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Appeal from the Bankruptcy Court's Final DIP Order**

## I. INTRODUCTION

On December 27, 2018, appellant Official Committee of Unsecured Creditors of Verity Health System of California, Inc. (the "Committee") filed the instant Notice of Appeal ("Appeal") (DE 1). The Committee appeals the bankruptcy court's final order (I) authorizing postpetition financing, (II) authorizing use of cash collateral, (III) granting liens and providing superpriority administrative expense status, (IV) granting adequate protection, (V) modifying automatic stay, and (VI) granting related relief ("Final DIP Order").

On April 8, 2019, the Court granted motions to intervene from UMB Bank, N.A. ("UMB"), Wells Fargo Bank, National Association ("Wells Fargo"), and the U.S. Bank National Association ("U.S. Bank").

The Committee's opening brief was filed on March 14, 2019 (DE 22). Appellee U.S. Bank and movants UMB and Wells Fargo filed a reply brief on April 15, 2019 (DE 31). The same day, appellee Verity Health System of California, Inc. ("Verity") also filed a reply (DE 32). The Committee filed its reply brief on April 29, 2019 (DE 34). Finally, the Court took the matter under submission on May 31, 2019.

For the following reasons, the Court **DISMISSES** the Committee's Appeal **as moot**.

## II. JURISDICTIONAL BASIS

The Court has jurisdiction over this Appeal pursuant to 28 U.S.C. § 158(a)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-10675-RGK | Date | August 02, 2019 |
|---|---|---|---|
| Title | *In re Verity Health System of California, Inc., et al.* | | |

### III. FACTUAL BACKGROUND[1]

On August 31, 2018, Verity and its subsidiaries (collectively, "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The same day, the bankruptcy court entered an order granting the Debtors' motion for joint administration of their chapter 11 cases. The Debtors continue to manage and operate their businesses and properties as debtors in possession. The Committee has been appointed as the statutory representative of, and fiduciary to, the Debtors' unsecured creditors. Unsecured creditors include nurses, doctors, lab technicians, former employees, vendors, and tort claimants.

The Debtors operate several acute care hospitals: O'Connor Hospital, Saint Louise Regional Hospital, St. Francis Medical Center, St. Vincent Medical Center, Seton Medical Center, and Seton Medical Center Coastside (collectively, the "Hospitals"). Verity, the Hospitals, and their affiliated entities also operate a nonprofit healthcare system in California with approximately 1,680 patient beds, six emergency rooms, one trauma center, and various medical specialties. In 2017, the Hospitals provided medical services to over 50,000 inpatients and approximately 480,000 outpatients. As of August 30, 2018, the Debtors' facilities had approximately 50% capacity and over 7,000 employees.

The Debtors are jointly obligated parties on approximately $461.4 million in outstanding secured debt consisting of: (1) $259.4 million in outstanding principal of tax exempt revenue bonds, Series 2005 A, G, and H issued by the California Statewide Communities Development Agency (the "2005 Bonds"); and (2) $202 million in outstanding principal amount of tax exempt revenue bonds, Series 2015 A, B, C, and D and Series 2017, issued by the California Public Financing Authority (the "Working Capital Notes"). For the 2005 Bonds, Wells Fargo is the Bond Trustee and UMB is the successor Master Trustee. U.S. Bank is the Note Trustee and Collateral Agent for the Working Capital Notes. Verity also holds $60 million in unsecured notes dated March 7, 2018 and March 29, 2018 (the "Unsecured Notes").

The Debtors' income is subject to prepetition perfected pledges. The Hospitals' gross revenue is pledged in favor of the 2005 Bonds, and the Hospitals' prepetition accounts receivable and government receivables are pledged in favor of the Working Capital Notes. On the day they filed for bankruptcy, the Debtors had less than $40 million cash on hand not subject to control accounts in favor of the 2005 Bonds, the Working Capital Notes, or in financing on their interest in real estate holdings.

On September 6, 2018, the bankruptcy court authorized the Debtors to borrow $30 million from Ally Financial, Inc. (the "DIP Lender") on an interim basis ("Interim DIP Order"). The Debtors then

---

[1] The Court discusses only the facts, parties, and issues relevant to the instant Appeal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-10675-RGK | Date | August 02, 2019 |
|---|---|---|---|
| Title | *In re Verity Health System of California, Inc., et al.* | | |

requested authorization to borrow up to an additional $155 million from the DIP Lender on a final basis ("Financing Motion"). After reviewing the papers filed in connection with the Financing Motion and conducting a hearing, the bankruptcy court authorized the Financing Motion and granted the final DIP order ("Final DIP Order") on October 4, 2018.

Before arriving at its decision, the bankruptcy court found that the Debtor established its need for the proposed financing from the DIP Lender. Specifically, as of the bankruptcy filing date, the Debtors' assets were valued at $857 million, while the secured claims against the Debtors totaled $565 million. During the first thirteen weeks of the case, however, the Debtors were projected to collect $239 million in patient revenue but spend $405 million to maintain Hospital operations. The estimated shortfall would be approximately $109 million. In other words, the Debtors desperately needed postpetition financing.

To that end, the bankruptcy court approved the financing package negotiated between the Debtors and the DIP Lender (the "DIP Agreement"). Specifically, the court allowed the Debtors to borrow on a superpriority basis under 11 U.S.C. § 364 and found that the secured creditors whose liens were primed and whose cash collateral would be used were "adequately protected" under the terms of the DIP Agreement.[2] The court then entered the Final DIP Order, which is the subject of the instant Appeal.

The Committee lodged several objections to the Final DIP Order before it was approved. In general, the Committee argued that the terms of the DIP Agreement were unduly favorable to the secured creditors at the unsecured creditors' expense. In response, the Debtors maintained that the terms were the best possible under the circumstances, and that the challenged provisions were necessary to induce the DIP Lender to provide the financing.

Relevant here, the Committee objected to two elements of the Final DIP Order. Specifically, the Final DIP Order includes an adequate protection package in which the secured creditors obtained waivers of rights available under 11 U.S.C. § 506(c) (the "§ 506(c) Waiver") and 11 U.S.C. § 552(b) (the "§ 552(b) Waiver") (collectively, the "Waivers"). Under § 506(c), a trustee may recover the costs and expenses of preserving or disposing of property held by secured creditors. 11 U.S.C. § 506(c). Section 552(b) allows the court to exclude postpetition proceeds of a debtor's assets from the secured creditors' collateral package based on the "equities of the case." 11 U.S.C. § 552(b). The Committee argued that the Waivers prejudice the unsecured creditors and are unduly beneficial to the secured creditors.

---

[2] The bankruptcy court noted that the secured creditors were also protected by an equity cushion, replacement liens, and superpriority claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-10675-RGK | Date | August 02, 2019 |
|---|---|---|---|
| Title | *In re Verity Health System of California, Inc., et al.* | | |

The bankruptcy court overruled the Committee's objections, finding that the Waivers were necessary to induce the DIP Lender to extend financing and that it was reasonable for the Debtors to include the Waivers as part of the secured creditors' "adequate protection package." In the DIP Agreement, the DIP Lender maintained that the secured creditors' consent to the Final DIP Order was a condition precedent to the financing package. In turn, the secured creditors conditioned their consent on the inclusion of the Waivers. Against this backdrop, the bankruptcy court found that the Waivers were appropriate and necessary. The bankruptcy court also determined in the Final DIP Order that the DIP Lender acted in good faith and had negotiated with the Debtors at arms' length.

The Committee now appeals the inclusion of the Waivers in the Final DIP Order.

### IV. QUESTIONS PRESENTED

1. Whether the Committee's Appeal is equitably moot or statutorily moot under 11 U.S.C. § 364(e).

2. Whether the bankruptcy court abused its discretion when it included the § 506(c) and § 552(b) Waivers in the Final DIP Order's adequate protection package.

### V. STANDARD OF REVIEW

The district court reviews a bankruptcy court's conclusions of law de novo and reviews its factual findings for clear error. *Nichols v. Birdsell*, 491 F.3d 987, 989 (9th Cir. 2007).

A bankruptcy court's decision regarding adequate protection "is reviewed for abuse of discretion." *In re Big3D, Inc.*, 438 B.R. 214, 219 (B.A.P. 9th Cir. 2010). "To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court 'identified the correct legal rule to apply to the relief requested' and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible or 'without support in inferences that may be drawn from the facts in the record.'" *In re Ellsworth*, 455 B.R. 904, 914 (B.A.P. 9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1261–62 & n. 21 (9th Cir. 2009) (en banc)); *see also USAA Fed. Sav. Bank v. Thacker (In re Taylor)*, 599 F.3d 880, 887–88 (9th Cir. 2010).

### VI. DISCUSSION

The Court first addresses whether the Committee's Appeal is moot. If the Appeal is not moot, the Court will turn to the Committee's substantive challenge to the Final DIP Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No. | 2:18-cv-10675-RGK | Date | August 02, 2019 |
|---|---|---|---|
| Title | *In re Verity Health System of California, Inc., et al.* | | |

### A. **Mootness**

Verity, one of the appellees, argues that the Committee's Appeal is both equitably and statutorily moot. A bankruptcy appeal may be equitably moot "when there has been a comprehensive change of circumstances" that renders it "inequitable for this court to consider the merits of the appeal." *In re Mortgages Ltd.*, 771 F.3d 1211, 1214 (9th Cir. 2014) (internal citations omitted). "An appeal is equitably moot if the case presents 'transactions that are so complex or difficult to unwind' that 'debtors, creditors, and third parties are entitled to rely on [the] final bankruptcy court order.'" *Id.* at 1215 (citing *In re Thorpe Insulation Co.*, 677 F.3d 869, 880 (9th Cir. 2012)). Similarly, "an appeal is moot when a change in circumstances prevents effective relief." *In re Adams Apple, Inc.*, 829 F.2d 1484, 1489 (9th Cir. 1987). This rule reflects "the specific notion in bankruptcy law that there is a need for finality in orders." *Id.*

An appeal may also be moot pursuant to 11 U.S.C. § 364(e) ("§ 364(e)"). Section 364(e) provides:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e). As such, "[a]n appellate court may not reverse the authorization to obtain credit or incur debts under section 364 if the authorization was not stayed pending appeal unless the lender did not act in good faith." *In re Adams Apple*, 829 F.2d at 1487–88.

Section 364(e) may apply here. The first issue is whether the Committee is seeking the "reversal or modification" of an authorization under § 364. As outlined above, § 364 allows the debtor in possession to obtain credit and incur debt on behalf of the estate in chapter 11 cases if certain conditions are satisfied, including a finding that the secured creditors have "adequate protection." 11 U.S.C. § 364. Here, the bankruptcy court's Final DIP Order explicitly authorized financing under § 364.

The Committee contends that this Appeal falls outside § 364(e) because it relates to adequate protection, not to the extension of credit or incurring of debt. To be sure, the Committee is not asking for a blanket reversal of the Court's Final DIP Order. Instead, the Committee is requesting a reversal of the Final DIP Order "to the extent that" the Order includes the Waivers or for a modification of the adequate protection package. That said, either form of relief constitutes a "modification" of the bankruptcy court's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-10675-RGK | Date | August 02, 2019 |
|---|---|---|---|
| Title | *In re Verity Health System of California, Inc., et al.* | | |

Final DIP Order, which is an authorization of postpetition financing under § 364. And if the court's order "is within the purview of section 364," then the protections of § 364(e) apply. *See In re Adams Apple*, 829 F.2d at 1488 (finding that a cross-collateralization lien falls within the purview of § 364 because it relates to a financing device used to obtain credit after filing bankruptcy, and thus § 364(e) applies).

The Ninth Circuit has extended § 364(e) to analogous situations. "Section 364 was designed to provide a debtor a means to obtain credit after filing bankruptcy." *In re Adams Apple*, 829 F.2d at 1488. To that end, § 364 "authorizes a bankruptcy court to permit the use of a variety of financing devices." *Id.* Section 364(e), for its part, helps good faith lenders overcome their "reluctance to extend financing in a bankruptcy context by permitting reliance on a bankruptcy court's authorization." *In re Cooper Commons, LLC*, 430 F.3d 1215, 1219 (9th Cir. 2005). "[I]t follows that any provisions of the financing agreement that [the lender] might have bargained for or that helped motivate its extension of credit are protected by § 364(e)." *Id.* at 1219–20. In other words, "any agreements or conditions necessary to obtain the credit" cannot be undone pursuant to § 364(e); an appeal attempting to do so is moot. *Id.* (citing *In re Adams Apple*, 829 F.2d at 1488).

    1. *The Bankruptcy Court's Approval of the Waivers*

After reviewing the evidence and conducting a hearing, the bankruptcy court found that both the § 506(c) and the § 552(b) Waivers in the adequate protection package were "necessary to induce the DIP Lender to extend the financing." The DIP Lender expressly required that the secured creditors consent to the Final DIP Order. The secured creditors, in turn, only granted their consent after the Waivers were included in the adequate protection package. Because the Debtors faced a "dire financial position," the bankruptcy court noted that they were "very fortunate to have negotiated a financing package containing such favorable terms." The bankruptcy court then overruled the Committee's objections to the Waivers, finding that their inclusion was reasonable. The Committee raises the same objections again here.

    2. *This Court's Review of the Bankruptcy Court's Findings*

Here, the Court must first examine the bankruptcy court's finding that the Waivers were necessary. On appeal, the court reviews a bankruptcy court's factual findings for clear error. *See Birdsell*, 491 F.3d at 989. "A finding of fact is clearly erroneous, even though there is evidence to support it, if we have the definite and firm conviction that a mistake has been committed." *Banks v. Gill Distribution Ctrs., Inc. (In re Banks)*, 263 F.3d 862, 869 (9th Cir. 2001). Based on the record, the Court finds that the bankruptcy court did not err in finding that the Waivers were necessary to induce the DIP Lender. The DIP Agreement states that the consent of the prepetition secured creditors to the Final DIP

| CV-90 (06/04) | CIVIL MINUTES - GENERAL | Page 6 of 8 |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-10675-RGK | Date | August 02, 2019 |
|---|---|---|---|
| Title | *In re Verity Health System of California, Inc., et al.* | | |

Order is a condition precedent to the DIP Lender's obligation to make revolving loans.[3] (*See* DIP Agreement ¶ 3.3, Appellant's Appx. Tab 3, ECF No. 23-3.) The secured creditors then conditioned their consent to the Final DIP Order on the inclusion of the Waivers in the adequate protection package. Notably, the Committee presents no evidence to the contrary and raises no genuine dispute that the bankruptcy court's finding was erroneous. The Court therefore adopts the relevant findings of the bankruptcy court: namely, that the Waivers were necessary to induce the DIP Lender to enter the financing agreement, because the Waivers were needed to induce the secured creditors' consent.

With these facts in mind, the Court now turns to whether § 364(e) renders the instant Appeal moot.

       3.     *Whether § 364(e) Moots the Committee's Appeal*

The Committee's Appeal seeks to remove a condition that was necessary to obtain credit. As a result, § 364(e) may render it moot if its remaining elements are met.

Section 364(e) applies if the order has not been stayed and the lender acted in good faith. Here, the Committee did not seek or obtain a stay of the Final DIP Order. This fact is not in dispute. Moreover, the bankruptcy court found that the DIP Lender acted in good faith and that the DIP Agreement was negotiated in good faith and at arms' length. These facts are not substantively challenged by the Committee. As discussed above, the Court reviews the bankruptcy court's factual findings for clear error. Based on the record, there is no indication that a mistake has been committed or that the findings are erroneous. *See Banks*, 263 F.3d at 869. The Court therefore adopts these findings here.

Accordingly, the Court finds that the elements of § 364(e) have been satisfied. The Appeal is moot under § 364(e).

       4.     *The DIP Stipulation*

One last possible defense remains. After filling the instant Appeal, the Committee signed an agreement with the DIP Lender (the "DIP Stipulation") that appears to state that if the Committee wins its Appeal, the Final DIP Order will remain in full force as to the DIP Lender. (*See* Stipulation 3,

---

[3] The DIP Agreement also states that an amendment, modification, or reversal of the terms of the Final DIP Order constitutes an "event of default." (*Id.* ¶ 9.1(q)(xii).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-10675-RGK | Date | August 02, 2019 |
|---|---|---|---|
| Title | *In re Verity Health System of California, Inc., et al.* | | |

Appellee's Appx. Tab 2, ECF No. 33-1.) At first glance, the DIP Stipulation appears to preclude mootness under § 364(e).

But while the DIP Stipulation may attempt to override § 364(e), it does not necessarily do so here. First, there is no indication that the bankruptcy court granted this Stipulation. Second, neither the Committee nor the DIP Lender explains how the DIP Stipulation relates to the DIP Agreement, which was negotiated and agreed to by different parties.

The Court is not persuaded that it can cause the modification of a necessary term in the DIP Agreement without implicating § 364(e). *See In re Cooper Commons*, 430 F.3d at 1219–20. If the Court deletes the Waivers, the secured creditors may no longer consent to the priming of their lien or to the use of their cash collateral. And by the plain language of the DIP Agreement, the secured creditors' consent to these financing terms is a required condition. The secured creditors could then revoke their consent. Any modification of the DIP Agreement's terms may result in default, per the Agreement itself. So even if the Committee and the DIP Lender agreed to the DIP Stipulation, it does not automatically override the DIP Agreement, which was entered between the DIP Lender and the Debtors and affirmed by the bankruptcy court.

As a result, the Court will not rely on the DIP Stipulation as assurance that removing the Waivers will not materially alter the DIP Agreement. In fact, the *very terms* of the DIP Agreement suggest that the loss of the secured creditors' consent may result in default. *Cf. In re Defender Drug Stores, Inc.*, 145 B.R. 312, 315 (B.A.P. 9th Cir. 1992) (finding that a stipulated amendment that carved out an exception to § 364(e) was valid when the court expressly adopted the parties' stipulation into its financing order).

**B.      The Final DIP Order**

Because the Court finds that the Appeal is moot, it need not address its substantive merits.

**VII.    CONCLUSION**

For the foregoing reasons, the Court **DISMISSES** the Committee's Appeal **as moot**.

**IT IS SO ORDERED.**

:

Initials of Preparer